REO SALES, INC., a Colorado corporation, formerly d/b/a Prudential King–Sullivan Properties, Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey Corporation, Prudential Real Estate Affiliates, Inc., a Delaware corporation, Prudential Home Mortgage Company, Inc., a New Jersey corporation, Prudential Residential Services, Ltd. Partnership, a Delaware Limited Partnership, d/b/a Prudential Relocation Management, Defendants.

No. 95–D–2678.

United States District Court, D. Colorado.

May 24, 1996.

Joseph A. Murr, Denver, CO, for Plaintiff.

Michael E. Katch, Katch, Sender & Wasserman, P.C., Denver, CO, Alan H. Silberman, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

## I. *INTRODUCTION*

This diversity action, 28 U.S.C. § 1332, is before the Court on defendants' Motion to Dismiss or, in the Alternative, to Transfer [Venue], filed November 28, 1995. The matter has been fully briefed, and oral argument occurred on May 22, 1996. The essence of defendants' argument is that, pursuant to an overriding forum selection clause contained in the parties' franchise agreement, venue is proper only in the Central District of California, Orange County Division—Santa Ana. In response, Plaintiff REO Sales, Inc. (REO) makes three arguments: (1) the forum clause

is unenforceable since REO is claiming fraud in the inducement; (2) even if enforceable, other section 1404(a) factors (i.e. location of witnesses, docket congestion, etc.) weigh in favor of this forum; and (3) in any event, defendants have waived their privilege to object to venue. For the reasons discussed herein, I grant defendants' motion.

## II. *BACKGROUND*

This dispute arises from a contract—called the "Franchise Agreement"—entered into by the parties on May 12, 1993.[1] The defendants are related corporate entities and the plaintiff is, or at least was, one of its franchisees. Of significance, the parties' Franchise Agreement contains a comprehensive venue provision, entitled VENUE: SUBMISSION OF ISSUES TO COURT, which states:

> The parties acknowledge that Franchisor [defendants] operates a nationwide franchise system, with franchisees located in numerous different states and in numerous counties and cities within such states. Accordingly, the parties hereby agree that in view of the fact that the books, records and business personnel of Franchisor are located, for the most part, in Orange County, California, and in order to minimize disruption or interference with operation of the franchise system as a whole, Franchisee and Franchisor agree as follows:
>
> (a) ANY AND ALL COURT PROCEEDINGS ARISING FROM OR RELATING IN ANY MANNER TO ANY DISPUTE BETWEEN FRANCHISOR AND ANY OF ITS AFFILIATES, ON THE ONE HAND, AND FRANCHISEE AND ANY OF ITS AFFILIATES, ON THE OTHER, ARISING OUT OF, RELATING TO OR REFERENCING THIS AGREEMENT OR ITS BREACH IN ANY WAY, SHALL BE BROUGHT IN, AND ONLY IN, THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA (ORANGE COUNTY DIVISION—SANTA ANA).

The parties' relationship soured, with REO filing the instant action in October 1995.

Though REO's Complaint asserts fourteen claims for relief against four defendants—including claims for breach of the implied duty of good faith and fair dealing, negligent misrepresentation, misappropriation of trade secrets, civil conspiracy, intentional interference with contract, and recision—I note that this action is grounded primarily in fraud and breach of contract claims.

## III. *DISCUSSION*

The Supreme Court has held that in a diversity action, wherein the defendant moves to enforce a forum selection clause, the standard for determining whether transfer is appropriate is the same as for a transfer of venue motion made pursuant to 28 U.S.C. § 1404(a). *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30, 108 S.Ct. 2239, 2243–44, 101 L.Ed.2d 22 (1988). Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court ... where it might have been brought." Though technically the balancing of section 1404(a) factors remains unchanged in this context, the *Stewart* court noted that "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." *Id.* at 29, 108 S.Ct. at 2244. To this effect, the *Stewart* court added that a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration ... nor no consideration ...,, but rather the consideration for which Congress provided in section 1404(a)." *Id.* at 31, 108 S.Ct. at 2245.

■ Though normally the movant bears a heavy burden to establish that a case should be heard in another forum, when a valid, enforceable forum-selection clause exists, the burden for all practical purposes shifts to the nonmovant to demonstrate that the forum clause should not be respected. *See Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir.1990) (holding that absent fraud or overreaching,

---

1. Note, technically there are two contracts: (1) the Franchise Agreement; and (2) the First Amendment to the Franchise Agreement. However, since both were executed by the parties on May 12, 1993, they are collectively referred to as the Franchise Agreement for convenience.

forum clause should be enforced unless clearly shown that enforcement would be unreasonable or unjust); *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989) ("In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action."); *cf. Milk 'N' More v. Beavert,* 963 F.2d 1342, 1345 (10th Cir.1992) (holding that a clause limiting venue to state courts was mandatory, thus necessitating remand); *but see Hoffman v. Minuteman Press Int'l, Inc.,* 747 F.Supp. 552, 554 (W.D.Mo.1990) (stating that "the party moving for the transfer still bears the burden of proving that the balance of section 1404(a) interests weighs in favor of transfer, and, unless the party resisting application of the forum clause can demonstrate why it should not, the clause will factor significantly into the balancing"). Thus, however technically framed, it is clear that an enforceable forum-selection clause will often carry the day when making a section 1404(a) determination. Having said that, this begs a threshold question: Is the forum-selection clause enforceable in this instance?

### A. *The Forum–Selection Clause is Enforceable*

■ As an initial matter, REO argues that since its Complaint asserts fraud in the inducement of the Franchise Agreement, the forum-selection clause is either unenforceable as a matter of law or should receive little, if any, weight in my section 1404(a) analysis. This argument has its genesis in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972), wherein the Supreme Court held that a forum selection clause should be enforced unless it was obtained through fraud or overreaching. Though REO makes no argument that the forum clause itself was procured by fraud, it argues that the clause should nonetheless be disregarded since the overriding fraud that it asserts taints the parties' entire contract. In support, REO cites *Hoffman,* 747 F.Supp. at 552, where the court rejected a forum selection clause when fraud was alleged because:

> The burdened party might have agreed to the forum clause as a trade-off for other advantageous provisions in the contract.

Thus, such a clause may represent an allocation of risks to which the parties agreed for any number of reasons unrelated to any real evaluation of what is the best forum for both parties. If a forum clause is included in a contract for such reasons, then the burdened party's claim of fraud in the inducement of the contract necessarily taints the forum clause; but for the fraud in the inducement, the burdened party would never have agreed to the burdensome forum clause.... The only sensible solution is not to enforce forum clauses in legitimate fraudulent inducement cases. It is simple common sense that allegations of fraud in the inducement put into question the validity of the entire contract.

*Id.* at 557–58. Notwithstanding its conceptual allure, I reject *Hoffman* for a number of reasons.

First, I again note that REO is in no way claiming that the forum clause itself was procured by fraud. This is significant because as the Supreme Court stated in the related context of *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974):

> In *The Bremen* we noted that forum-selection clauses 'should be given full effect' when 'a freely negotiated private international agreement (is) unaffected by fraud....' This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion.

*Id.* at 519 n. 14, 94 S.Ct. at 2457 n. 14; *cf. Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991) (stating that "there is no evidence that petitioner obtained respondents' accession to the forum clause by fraud or overreaching"); *Marklyn Controls Supply v. Pall Trinity Micro Corp.,* 862 F.Supp. 140, 141 (W.D.Tex.1994) ("Plaintiff has not shown fraud or overreaching by Defendant with re-

spect to the forum selection clause or the formation of the Agreement.").

To this effect, even the *Hoffman* court noted that "[t]here is abundant dictum in federal case law that a forum selection clause will be enforced unless it can be shown that the forum clause itself is 'unreasonable' or was the result of fraud or overreaching." *Hoffman,* 747 F.Supp. at 555. Though REO expends considerable effort trying to distinguish both *The Bremen* and *Scherk,* I note that the rules enunciated therein have "been extended in . . . other circuits to diversity and other non-admiralty cases." *Jones,* 901 F.2d at 18; *see also Friedman v. World Transp., Inc.,* 636 F.Supp. 685, 689 (N.D.Ill. 1986) (stating that "[w]hile *The Bremen* was an admiralty case, set in an international context, its teachings are not limited to such cases . . . [and] [l]ower federal courts have consistently applied *The Bremen* analysis to cases involving only domestic parties and causes of action other than admiralty"). Accordingly, since here there is no allegation that the forum clause itself was procured by fraud, I find REO's argument unpersuasive.

■ Second, I also note that the facts in *Hoffman* are somewhat distinguishable from those now presented. For instance, in *Hoffman* the case "involve[d] allegations that small, unsophisticated business people were fraudulently induced to enter franchise agreements which they never would have entered but for the fraud." *Hoffman,* 747 F.Supp. at 559. Here, no such assertions can be credibly advanced. As its Complaint states, REO is a "nationally successful" asset management entity. *Complaint* at ¶ 10. It is a sophisticated entity that has been in business since 1986, grossing as much as $3,000,000 per year, based on information provided to me at the May 22, 1996 hearing. Though its principals chose not to engage counsel in negotiating the Franchise Agreement, plaintiff had at least some bargaining power as evidenced by its ability to coax an amendment to the Franchise Agreement. Furthermore, though it is unclear just how detailed or prominent the forum selection clause was in *Hoffman,* here the forum clause is both comprehensive and conspicuous, as evidenced by its length and bold type.

Thus, I am satisfied that the forum clause survives "judicial scrutiny for fundamental fairness." *Carnival Cruise Lines,* 499 U.S. at 595, 111 S.Ct. at 1528.

A case more on point is *Picken v. Minuteman Press International, Inc.,* 854 F.Supp. 909 (N.D.Ga.1993), wherein the court considered and rejected arguments similar to those now raised by REO. In *Picken,* the court began by noting that "in spite of Plaintiffs' attempts to argue to the contrary, the contract in question seems to have been negotiated freely between experienced business professionals." *Id.* at 911. Moreover, as is the case here, the plaintiffs in *Picken* similarly contended "that since they are alleging not just a breach of contract claim but also fraud in the inducement, the court should not rely on the forum selection clause since the contract may be found to be voidable." *Id.* However, in disregarding this argument, the court stated that

the mere allegation of fraud in the complaint should not determine the enforceability of a forum selection clause. Plaintiffs allege fraud in the inducement. This type of fraud attacks the underlying transaction as having been deceitful. It does not attack the language of the contract itself. This is to be distinguished from fraud in factum in which a party is tricked into assenting without understanding the significance of his action. Plaintiffs are not arguing that they did not understand what the contract itself stated.

. . . .

The court understands that particularly egregious allegations of fraud might provide an exception to the enforcement of a forum selection clause. Where, as here, however, the allegations are those which are commonly alleged between parties when a business deal goes sour, this court is unpersuaded that the original understanding of the parties should not be enforced.

*Id.* at 911–12; *cf. The Bremen,* 407 U.S. at 17, 92 S.Ct. at 1917 (stating that the party resisting enforcement of a forum selection clause bears a "heavy burden of proof" on the issues of fraud or overreaching).

Finally, I consider a practical concern. If a forum clause were to be rejected whenever a plaintiff asserted a generic claim of fraud in the inducement, as is the case here, then forum clauses would be rendered essentially meaningless. That is, whenever a plaintiff had a breach of contract claim, it could defeat an otherwise clear, detailed, and comprehensive forum selection clause by simply alleging fraud as well. Such a holding would denigrate the Supreme Court's overriding mantra expressed in *The Bremen* and *Stewart* that forum selection clauses should not be dismissed lightly. For all these reasons, I conclude that the parties' forum selection clause is enforceable in this instance.

### B. *Balancing the Section 1404(a) Factors, Transfer is Required*

■ Given that the forum selection clause is enforceable, I now proceed to engage in the customary section 1404(a) analysis. However, in so doing, the forum selection clause plays a "significant factor that figures centrally in [my] calculus." *Stewart,* 487 U.S. at 29, 108 S.Ct. at 2244. In this instance, the "other factors" are at best a "wash," and at worst, actually support transfer. Specifically, concerning the factor of convenience of the witnesses, it appears that more prospective witnesses reside in California than Colorado.[2] Similarly, as for location of counsel, this factor is essentially a wash, with plaintiff's counsel located in Colorado and defendants' chief counsel maintaining offices in both Illinois and California. The choice of law factor, however, favors this forum since the underlying issues appear to be subject to Colorado substantive law. Finally, contrary to plaintiff's assertion, the docket of this court is actually more congested than the docket of the Central District of California.[3] In short, these other factors essentially offset one another with none overriding the substantial weight I am to accord the forum selection clause. Accordingly,

pursuant to 28 U.S.C. § 1404(a), transfer is appropriate.

### C. *Waiver*

■ Though asserted less enthusiastically, plaintiff also argues that the defendants have waived their right to contest venue. To this effect, REO notes that a venue objection must be raised as part of defendants' first defensive move, be it a Rule 12 motion or a responsive pleading. *See Marquest Med. Prods., Inc. v. EMDE Corp.,* 496 F.Supp. 1242, 1245 (D.Colo.1980) ("A litigant must exercise great diligence in challenging personal jurisdiction or venue; he should do so at the time he makes his first defensive move."). Having reexamined the pleadings in this case however, I find that defendants have not waived their venue objection.

Specifically, the record indicates that REO filed its complaint on October 20, 1995. No answer or other responsive pleading having been filed by defendants, REO then filed a Motion for Entry of Default on November 17, 1995. Before the motion was acted upon, defendants filed a Motion for Extension of Time to Answer on Behalf of All Defendants on November 20, 1995. Of significance, that motion, which I granted on November 22, 1995, stated that defendants will "answer or *otherwise respond* to the Complaint ... no later than December 6, 1995." Thereafter, in the next pleading filed in this case, defendants filed their instant motion on November 28, 1995. Under these circumstances, REO's argument that the defendants waived their venue objection has no basis in either law or fact.

### D. *Transfer, not Dismissal, is Appropriate*

■ Finally, I must consider whether dismissal under 28 U.S.C. § 1406(a) or transfer under 28 U.S.C. § 1404(a) is appropriate. It is abundantly clear that transfer is the appropriate remedy when a forum selection

---

2. Note, insofar as witnesses who reside in neither Colorado nor California may testify, I find that both forums are equally (in)convenient.

3. As of September 30, 1995, the "average weighted case filings" (AWCF) per judge in the District of Colorado was 553 whereas the comparable

figure for the Central District of California was 431, a difference of over 120 cases per judge. Similarly, the average time for case disposition is seven months in Colorado compared to six months in California.

clause is applicable. *See, e.g., Visicorp v. Software Arts, Inc.,* 575 F.Supp. 1528, 1533 (N.D.Cal.1983) ("This Court adopts the modern view that transfer is correct, following the *Bremen* Court's view that enforcement of a forum selection clause should not oust a court of jurisdiction.").

## IV. *CONCLUSION*

For the reasons discussed above, it is hereby ORDERED that defendants' motion to transfer venue to the Central District of California, Orange County Division (Santa Ana), pursuant to 28 U.S.C. § 1404(a), is GRANTED. The Clerk of Court is directed to effectuate this transfer. It is further ORDERED that defendants' motion to dismiss is DENIED.